UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CECILE ANN CANCEL,<br><br>              Plaintiff,<br><br>     v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER, SOCIAL SECURITY<br>ADMINISTRATION,<br><br>              Defendant. | NO. CV 05-02768-CT<br><br>OPINION AND ORDER |

For the reasons set forth below, it is ordered that the matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to defendant Commissioner of Social Security ("the Commissioner") for further administrative action consistent with this opinion and order.

### **SUMMARY OF PROCEEDINGS**

On April 18, 2005, plaintiff Cecile Ann Cancel ("plaintiff"), filed a complaint seeking judicial review of the denial of benefits by the Commissioner pursuant to the Social Security Act ("the Act"). On May 12, 2005, the parties filed a consent to proceed before the magistrate judge. On July 28, 2005, plaintiff filed a brief in support of the complaint. On September 28, 2005, the Commissioner filed a brief in opposition to relief requested in plaintiff's complaint.

**SUMMARY OF ADMINISTRATIVE RECORD**

1. <u>Summary of Proceedings</u>

On November 14, 2001, plaintiff filed an application for disability insurance benefits, alleging disability since June 23, 2001, due to back and joint problems; heart problems; rheumatological illness; and, a left leg injury. (TR 81-83, 91).[1] The application was denied initially and upon reconsideration. (TR 38-41, 44-47).

On November 12, 2002, plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). (TR 48). On August 29, 2003, plaintiff, represented by an attorney, appeared and testified before an ALJ. (TR 458-84). The ALJ also considered medical expert ("ME") testimony. (TR 475-80). On January 5, 2004, plaintiff, represented by an attorney, appeared and testified at a supplemental hearing before an ALJ. (TR 485-508). The ALJ also considered ME and vocational expert ("VE") testimony. (TR 489-99, 500-07). On February 4, 2004, the ALJ issued a decision that plaintiff is not disabled under the Act because she retains the residual functional capacity ("RFC") to perform a range of light work activity and is able to perform her past relevant work as a receptionist, Dictionary of Occupational Titles ("DOT") No. 237.367-038, and as a tutor, DOT No. 099.227-034. (TR 24-34). Thus, plaintiff is not eligible for benefits. (<u>Id.</u>) On March 9, 2004, plaintiff filed a request with the Social Security Appeals Council to review the ALJ's decision. (TR 16-18). On March 16, 2005, the request was denied. (TR 6-9). Accordingly, the ALJ's February 4, 2004

---

[1] "TR" refers to the transcript of the record of administrative proceedings in this case and will be followed by the relevant page number(s) of the transcript.

decision stands as the final decision of the Commissioner. Plaintiff subsequently sought judicial review in this court.

2. <u>Summary Of The Evidence</u>

The ALJ's February 4, 2004 decision summarizes much of the evidence in this case and is contained in the transcript of the record of administrative proceedings in this case at TR 24-34.

**PLAINTIFF'S CONTENTIONS**

Plaintiff contends as follows:

1. The ALJ ignored plaintiff's severe visual impairment in assessing plaintiff's RFC;
2. The ALJ failed to provide legally sufficient reasons for rejecting the opinions of plaintiff's treating physicians; and,
3. The ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's testimony.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and, (2) the Commissioner used proper legal standards. <u>Macri v. Chater</u>, 93 F.3d 540, 543 (9th Cir. 1996). Substantial evidence means "more than a mere scintilla," <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971), but less than a preponderance. <u>Sandgathe v. Chater</u>, 108 F.3d 978, 980 (9th Cir. 1997).

When the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, however, the court may not substitute its judgment for that of the Commissioner. <u>Flaten v. Secretary of Health and Human Services</u>, 44 F.3d 1453, 1457 (9th Cir.

3

1995). The court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g). Remand is appropriate where additional proceedings would remedy defects in the Commissioner's decision. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).

**DISCUSSION**

1. The Sequential Evaluation

A person is "disabled" for the purpose of receiving social security benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled. First, it is determined whether the person is engaged in "substantial gainful activity." If so, benefits are denied.

Second, if the person is not so engaged, it is determined whether the person has a medically severe impairment or combination of impairments. If the person does not have a severe impairment or combination of impairments, benefits are denied.

Third, if the person has a severe impairment, it is determined whether the impairment meets or equals one of a number of "listed impairments." If the impairment meets or equals a "listed impairment," the person is conclusively presumed to be disabled.

Fourth, if the impairment does not meet or equal a "listed impairment," it is determined whether the impairment prevents the person

4

from performing past relevant work.  If the person can perform past relevant work, benefits are denied.

Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform other kinds of work.  The person is entitled to benefits only if the person is unable to perform other work.  20 C.F.R. § 404.1520; <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987).

2.   <u>Issues</u>

A.   Visual Impairment (Issue #1)

Plaintiff contends that the ALJ ignored her severe visual impairment in assessing her RFC.

A severe impairment or combination of impairments is one that significantly limits the physical or mental ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting.  20 C.F.R. § 404.1521(b); <u>Bowen v. Yuckert</u>, 482 U.S. at 141-42.  The Ninth Circuit has defined the step-two inquiry as a "de minimis screening device to dispose of groundless claims."  <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1158 (9th Cir. 2001) (citing <u>Smolen v. Chater</u>, 80 F.3d 1273, 1290 (9th Cir. 1996)).

Here, at step two of the sequential evaluation, the ALJ found that plaintiff's decreased visual acuity secondary to retinal detachment repair in the left eye and scleral reinforcement in the right eye constituted a severe impairment as that term is defined under the Act. (TR 25).  As the ALJ noted in his decision, on a Special Sense Organs —

5

Eye form dated February 18, 2002, ophthalmologist Richard B. Thompson, M.D., diagnosed plaintiff as suffering from high myopia, incomplete restriction of the left inferior quadrant, peripheral retinal scarring, and elevated optic nerve cupping. (TR 27; see also TR 246-47). Visual acuity with best correction was 20/60 in the right eye and 20/50 in the left eye. (TR 27; see also 246). Plaintiff underwent eye surgery on June 19, 1974 and on March 27, 1975 for retinal tear repair. (Id.) The ALJ explained that Dr. Thompson indicated that there is no treatment necessary other than corrective lenses. (Id.) Dr. Thompson gave plaintiff a fair prognosis. (Id.)

The ALJ further noted that, on January 10, 2003, plaintiff complained of seeing floaters with slightly blurry vision, eye pain, and watery eyes on occasion. (TR 27; see also TR 351). David Richardson, M.D., opined that plaintiff was suffering from the new onset of floaters, history of lupus without treatment with Plaquenil, history of ocular migraine headaches (not active at this time), high myopia, and peripheral retinal degeneration. (TR 351).

On March 21, 2003, plaintiff's visual acuity was 20/50 in the right eye and 20/50 in the left eye. (TR 352). She still had deficits in visual fields in the left inferior quadrant bilaterally. (TR 354, 357).

On August 1, 2003, Peter Pressman, M.D., an assistant professor of clinical medicine at the University of Southern California Keck School of Medicine, reported that he had been treating plaintiff since July 2002. (TR 418). Among other things, Dr. Pressman reported that plaintiff "appears to have deficits in downward gaze/lower visual fields." (Id.)

Although the ALJ found that plaintiff suffers from a severe visual

6

1  impairment within the meaning of the Act, the ALJ did not assess any
2  visual limitations in evaluating plaintiff's RFC.  (See TR 32).  More
3  specifically, the ALJ adopted the RFC assessed by the ME, concluding
4  that:

> [Plaintiff] retains the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently, sit for about six hours, and stand and/or walk for four hours in an eight-hour workday without an assistive device.  She is precluded from climbing at dangerous heights or working at areas where balance would be considered a liability.  She should avoid excessive dust, fumes, smoky areas, or extreme temperatures.  She is precluded from working in an outdoor, high sun-exposed area.

(TR 32; see also TR 491-92).  Moreover, the ALJ's hypothetical to the VE did not include any visual limitations.  (See TR 500-01).  However, consultative physician Adi Klein, M.D., on whose opinion the ALJ in part relied, opined that plaintiff has a "visual workplace limitation due to mild refractive error residual with corrections."  (TR 28; see also 264).

The court notes that plaintiff's March 7, 2002 visual acuity test results indicate that plaintiff could visually move about the office without any help. (TR 265).  Additionally, when the ALJ asked plaintiff why she is not working, plaintiff responded that she has pain, fatigue, and difficulty walking, sitting, and standing for any reasonable length of time. (TR 463).  She did not mention any vision difficulties.  (Id.) Nonetheless, while plaintiff very well may be able to perform substantial gainful activity, the court concludes that further development of the record is warranted with respect to the severity of plaintiff's visual impairment and the impact of that impairment, if any, on plaintiff's ability to perform her past relevant work and/or alternative work activity.

7

B.  Treating Physicians' Opinions (Issue #2)

Plaintiff contends that the ALJ failed to provide legally sufficient reasons for rejecting the opinions of her treating physicians.

A treating physician's opinion generally is entitled to great weight.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)); Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987).  "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability."  Andrews v. Shalala, 53 F.3d at 1041 (citing Magallanes v. Bowen, 881 F.2d at 751). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record.  See 20 C.F.R. § 404.1527.

"The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted."  Andrews v. Shalala, 53 F.3d at 1041 (citing Magallanes v. Bowen, 881 F.2d at 751).  A medical opinion is considered uncontroverted if all the underlying medical findings in the record of plaintiff's physical impairments are similar.  Sprague v. Bowen, 812 F.2d at 1230.  To reject the uncontroverted opinion of plaintiff's physician, the ALJ must present clear and convincing reasons for doing so.  Andrews v. Shalala, 53 F.3d at 1041 (citing Magallanes v. Bowen, 881 F.2d at 751).  If the treating physician's opinion is contradicted by other doctors, the Commissioner may not reject the opinion without providing "specific and legitimate reasons" for doing so that are supported by substantial evidence.  Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (citing Reddick v. Chater, 157 F.3d 715

(9th Cir. 1998)).  See also Tonapetyan v. Halter, 242 F.3d 1144, 1148-49 (9th Cir. 2001).

### (1)  Samy Metyas, M.D.

Here, plaintiff's treating physician, Samy Metyas, M.D., completed a lupus RFC questionnaire on June 9, 2003.  (TR 335-39).  He indicated that plaintiff had been treating in the rheumatology clinic at LAC — USC since June 25, 2002.  (TR 335).  Dr. Metyas listed plaintiff's diagnoses as possible diagnosis of systemic lupus erythematosus, hypertension, and questionable coronary artery disease.  (Id.)  He indicated that plaintiff had a history of malar rash, photosensitivity, oral ulcers, non-erosive arthritis involving two or more peripheral joints, and severe fatigue.  (TR 335-36).  Plaintiff also had hair loss.  (TR 336). Objective testing found positive results, including a positive test for ANA.  (Id.)

Dr. Metyas indicated that plaintiff can walk three city blocks without rest.  (TR 337).  He opined that plaintiff can continuously sit and stand for two hours.  (Id.)  At the same time, he reported that plaintiff can sit and stand/walk for a total of less than two hours in an eight-hour workday.  (Id.)  When engaging in occasional standing/walking, plaintiff must use a cane or other assistive device. (TR 338).  She also will need to take three to four unscheduled ten-minute breaks during an eight-hour workday. (Id.)  Dr. Metyas indicated that plaintiff both occasionally and never can lift less than ten pounds.  (Id.)  He also concluded that plaintiff has significant limitations in doing repetitive reaching, handling, or fingering.  (Id.) As a result of her impairments or treatment, plaintiff is likely to be absent from work about twice a month.  (TR 339).

9

Significantly, when asked if plaintiff is a malingerer, Dr. Metyas replied, "I don't know." (TR 336). When asked if plaintiff's physical and emotional impairments are reasonably consistent with the symptoms and functional limitations set forth in his questionnaire, Dr. Metyas again responded, "I don't know." (Id.)

Dr. Metyas provided a similar assessment in a June 9, 2003 cardiac RFC questionnaire. (TR 360-65). In that questionnaire, when asked to explain his conclusion that plaintiff is capable of only low stress jobs, Dr. Metyas stated, "[M]any complaints, different complaints." (TR 361).

The ALJ essentially rejected Dr. Metyas's RFC assessment. (TR 30). The ALJ reasoned that Dr. Metyas's opinion was not consistent with his clinical findings, diagnoses, and the substantial evidence in the record. (Id.) The court notes that while Dr. Metyas reported that plaintiff requires an assistive device to stand or walk (see TR 338), other treatment notes state that plaintiff needs to increase weight bearing activity and "to wean herself from wheelchair and crutches for improvement." (TR 197, 279). Consultative physician, Adi Klein, M.D., noted that plaintiff walked and moved easily. (TR 260). Plaintiff's physical therapist, who questioned plaintiff's motivation to improve, reported that plaintiff stands rapidly from her wheelchair. (TR 184). Other physical therapy notes state that plaintiff's abilities far exceed what she says she can do. (TR 381). Moreover, while Dr. Metyas stated that plaintiff has a possible diagnosis of systemic lupus erythematosus, treatment notes state that there is no objective evidence of systemic lupus erythematosus or rheumatoid arthritis. (TR 279).

In rejecting Dr. Metyas's opinion, the ALJ also noted that it was

not clear from the questionnaires how often, or whether in fact, Dr. Metyas ever examined plaintiff. (TR 30). Dr. Metyas simply reported that plaintiff had been treating at the rheumatology clinic at LAC — USC since June 2002.[2] (TR 335). See Ghokassian v. Shalala, 41 F.3d 1300, 1303 (9th Cir. 1994) (physician considered a treating physician where the physician had seen plaintiff twice within a 14-month period preceding the hearing; plaintiff saw no other physicians during that period; plaintiff requested that the physician treat him; the physician prescribed medication for plaintiff; the physician referred to plaintiff as "my patient;" and, the physician was the doctor with the most extensive contact with the plaintiff); see also 20 C.F.R. § 404.1527(d)(2) (explaining that the Commissioner generally accords more weight to opinions from treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, *longitudinal* picture of the plaintiff's medical impairments). The ALJ further reasoned that some of Dr. Metyas's conclusions on the cardiac questionnaire were beyond Dr. Metyas's expertise as a rheumatologist, and appear to be based solely on plaintiff's subjective complaints and symptoms. (TR 30). As noted by the ALJ, Dr. Metyas indicated that the basis for his conclusion that plaintiff is limited to low stress jobs was based on plaintiff's many and different complaints. (TR 30; see also TR 361).

The ALJ further noted that Dr. Metyas's diagnoses were uncertain. (TR 30). More specifically, the ALJ explained that, on the cardiac

---

[2] Perhaps this explains why Dr. Metyas did not know if plaintiff is a malingerer. (TR 336, 361).

11

1  questionnaire, Dr. Metyas provided clinical findings of probable lupus
2  and a question mark in front of coronary artery disease.  (Id.; see also
3  TR 360).  The ALJ noted that, on the lupus questionnaire, Dr. Metyas
4  gave a possible diagnosis of systemic lupus erythematosus and two
5  question marks in front of coronary artery disease.  (TR 30; see also TR
6  335).  The ALJ stated that Dr. Metyas did not explain how these
7  uncertain findings limit plaintiff to walking and standing for less than
8  two hours in an eight-hour workday and to not ever being able to lift
9  ten pounds.  (TR 30).  Additionally, the ALJ reasoned that Dr. Metyas
10 provided no explanation as to how plaintiff would have significant
11 limitations in doing repetitive reaching, handling, or fingering (see TR
12 338), when no other physician of record restricted plaintiff's
13 activities due to shoulder, harm, or hand impairments.  (TR 30).  See
14 Batson v. Commissioner of the Social Security Administration, 359 F.3d
15 1190, 1195 (9th Cir. 2004) ("an ALJ may discredit treating physicians'
16 opinions that are conclusory, brief, and unsupported by the record as a
17 whole," or "by objective medical findings"); Connett v. Barnhart, 340
18 F.3d 871 (9th Cir. 2003) (the ALJ may properly reject plaintiff's
19 treating physician's conclusions regarding plaintiff's limitations where
20 such conclusions are not supported in the physician's own treatment
21 notes).

22      The ALJ also noted that when asked on the questionnaires if
23 plaintiff was a malingerer, Dr. Metyas replied, "I don't know."  (Id.;
24 see also 336, 361).  When asked if plaintiff's physical and emotional
25 impairments are reasonably consistent with the symptoms and functional
26 limitations set forth in his questionnaire, Dr. Metyas again responded,
27 "I don't know."  (TR 30; see also TR 336, 362).

28

In sum, the court concludes that the ALJ provided legally sufficient reasons for rejecting the opinion of Dr. Metyas.

(2) Peter Pressman, M.D.

Plaintiff asserts that the ALJ provided no reasons for rejecting the opinion of Peter Pressman, M.D.

As noted by the ALJ, in correspondence dated August 1, 2003, Dr. Pressman reported that plaintiff has been seen by him for routine medical care since July 2002. (TR 29; see also TR 418). He stated that plaintiff consistently has required assistive devices for ambulation, and even with a cane, walker, ankle and knee braces, and a lumbar brace, she is at best unsteady on her feet. (Id.) According to Dr. Pressman, plaintiff requires help in order to move any weight greater than ten pounds. (Id.)

While the ALJ summarized Dr. Pressman's opinion, the ALJ did not state the reasons for the weight assigned to the opinion. Since this matter is being remanded, on remand, the Commissioner should reconsider Dr. Pressman's opinion and articulate the reasons for the weight assigned to it.

C.   Plaintiff's Credibility (Issue #3)

Plaintiff claims that the ALJ failed to provide legally sufficient reasons for rejecting her functional limitations and pain testimony.

The Commissioner's assessment of plaintiff's credibility should be given great weight. Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). "Generally, a [plaintiff's] credibility becomes important at the stage where the ALJ is assessing [RFC], because the [plaintiff's] subjective statements may tell of greater limitations than can medical evidence alone." Tonapetyan v. Halter, 242 F.3d at 1147. For this

1  reason, the ALJ may not reject plaintiff's testimony regarding
2  plaintiff's limitations merely because they are not supported by
3  objective evidence. Id. at 1147-48 (citing Fair v. Bowen, 885 F.2d 597,
4  602 (9th Cir. 1989)). In assessing plaintiff's credibility, the ALJ may
5  use "ordinary techniques of credibility evaluation," such as considering
6  plaintiff's reputation for truthfulness and any inconsistent statements
7  in plaintiff's testimony. Id. at 1148. The ALJ must give specific,
8  convincing reasons for rejecting plaintiff's subjective statements. Id.
9  (citing Fair v. Bowen, 885 F.2d at 602). See also Bunnell v. Sullivan,
10 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (once the plaintiff produces
11 evidence of an underlying impairment that is reasonably likely to be the
12 cause of the alleged pain, the medical findings need not support the
13 severity of the symptoms, and the ALJ may not discredit the plaintiff's
14 allegations of the severity of the pain solely on the ground that the
15 allegations are unsupported by objective medical evidence).

16 Here, plaintiff, who appeared at the hearing with crutches,
17 testified that she was not then currently working because of pain,
18 fatigue, and difficulty walking, sitting, and standing "for any
19 reasonable length of time." (TR 463-64). She stated that her condition
20 has deteriorated over the years. (TR 464). She has good days and bad
21 days and could not perform her past work as a receptionist. (TR 464,
22 470).

23 The ALJ concluded that plaintiff's testimony concerning her
24 symptoms and their impact on her ability to work are not entirely
25 credible. (TR 31). First, the ALJ reasoned that some of plaintiff's
26 subjective complaints and allegations of symptoms are not supported by
27 the objective medical evidence. (Id.; see also TR 263, 304, 335, 360,

14

490). Second, the ALJ further noted that even plaintiff's own treating physician, Dr. Metyas, could not verify plaintiff's credibility. (TR 31). As the ALJ explained, when asked in his questionnaires whether plaintiff is a malingerer, Dr. Metyas responded, "I don't' know." (Id.; see also TR 336, 361).

The court concludes that these reasons are minimally sufficient. However, since this matter is being remanded, the Commissioner should reassess plaintiff's functional limitations and pain testimony. To the extent the Commissioner rejects plaintiff's testimony, the Commissioner should provide legally sufficient reasons for doing so.

### **REMAND IS APPROPRIATE IN THIS CASE**

The decision whether to remand a case for additional evidence is within the discretion of the court. Sprague v. Bowen, 812 F.2d at 1232. Remand is appropriate if the record is incomplete and additional proceedings would remedy defects in the Commissioner's decision. McAllister v. Sullivan, 888 F.2d at 603.

Having considered the record as a whole, it appears that the present record is insufficiently developed.

### **CONCLUSION**

While it may well be that plaintiff can perform substantial gainful activity and, therefore, is not disabled under the Act, the court concludes that the Commissioner's decision was obtained as a result of material legal error. Accordingly, it is ordered that the matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative action consistent with this opinion.

This opinion constitutes the court's findings of fact and

15

conclusions of law.

DATED: September 28, 2005.

                                                      / S /
                                       Carolyn Turchin
                                       UNITED STATES MAGISTRATE JUDGE